OPINION OF THE COURT
Meyer, J.
One who purchases real property subject to a lease which gives the tenant the option to renew for an additional seven years and the right to assign subject to consent of the landlord, such consent not, however, to be unreasonably withheld, may not, unless he can show reason for withholding consent, oust an assignee of the tenant, notwithstanding that upon the tenant’s exercise, after execution of the purchase contract, of the renewal option the seller and the tenant agreed to revised rent provisions. Although the purchaser is not bound by the rent provision changes, he is bound to honor the renewal on the terms of the original lease and not unreasonably to withhold consent to assignment of the lease as extended. The order of the Appellate Division should, therefore, be reversed and the matter *500 remitted to Supreme Court for consideration of the question whether the present owner (successor to the purchaser) has reasonable grounds for withholding consent to the assignment of the lease to plaintiff.
On September 19, 1979, defendant Neuman contracted to purchase from Suffolk Industrial Commodities (Suffolk) the premises at 13 South William Street in Manhattan. The contract stated that the sale was subject to a lease dated April 10, 1979, between Suffolk and Pussycat Lounge (Pussycat). That lease, which was exhibited to Neuman, expired March 31, 1980, but gave Pussycat the option of extending the term for a further period of seven years to March 31,1987. It also provided for assignment of the lease with the written consent of the landlord which the landlord “shall not unreasonably withhold.”
On October 2, 1979, Pussycat exercised its renewal option, after which, on October 29, 1979, two separate lease documents were executed between Suffolk and Pussycat. Each was for a term running from November 1, 1979 through March 31, 1987, but contained more stringent noise and hours limitations on the tenant and reduced the fixed rent from $2,400 to $2,000 per month but required the tenant to pay 50% of real estate taxes and fire and liability insurance premiums and, unless the tenant installed its own heating system and water meters, 50% of the heating costs and water and sewer charges. The only significant difference between the two October 29, 1979 leases was that one contained but the other did not a rider paragraph[1] defining the rights of the parties in the event the contract with Neuman, which Suffolk had disaffirmed claiming that the down payment check had been dishonored, were held valid or if Suffolk decided to consummate the contract.
*501 On October 31, 1979, Neuman began an action for specific performance and filed a notice of pendency. On March 31,1980, Pussycat executed an assignment to Margin Call Restaurant, Inc., and on November 7, 1980, Margin Call executed an assignment to plaintiff, in each case with the consent of Suffolk, and delivered with the assignment the October 29, 1979 lease which did not contain the rider referred to above. Neuman’s specific performance action having resulted in judgment in his favor, Suffolk, on February 2, 1982, deeded the premises to defendant Wells, Goode and Benefit, Ltd., Neuman’s successor. Plaintiff’s February rent check having been returned by the latter’s attorney with a letter stating the intention to commence eviction proceedings, plaintiff began the present action seeking judgment declaring the rights and legal relations of the parties. Supreme Court concluded that although Suffolk was the legal owner of the property when the October lease was executed, Neuman, as purchaser, was the equitable owner, and as to him the October lease was void as an illegal encumbrance. Based upon that conclusion it held that Pussycat and Margin Call had nothing to assign and plaintiff, having received nothing, could not remain in the premises. Plaintiff’s argument that it was successor by assignment of Pussycat’s rights under the April lease was rejected on the ground that Neuman’s consent to the 1980 assignments had not been obtained and that, in any event, plaintiff could be a third-party beneficiary of the April lease only if it had been assigned the October lease which contained the rider paragraph referred to above, which the court found not to be the case.[2]
The Appellate Division affirmed, two Justices dissenting, for the reasons stated by Supreme Court. The dissenters would have held that plaintiff was entitled to remain in the premises under either the April or the October lease, at defendant’s option. They reasoned that Neuman was bound by the April lease subject to which he had purchased and that the failure to obtain his consent to the 1980 assignments was not a bar unless he could show cause for withholding consent. We agree.
*502 Although a seller of real property may not, after contracting to sell, encumber the property to the purchaser’s disadvantage (Fruhauf v Bendheim, 127 NY 587; West 72nd St. Realty Corp. v Yeshiva Chofetz Chaim, 205 Misc 124, mod on other grounds 284 App Div 962, mot for lv to app den 285 App Div 806), and in that sense the purchaser is deemed to be the equitable owner (Williams v Haddock, 145 NY 144,150; see 7 Williston, Contracts [3d ed], § 927, p 819), a purchaser who obtains specific performance of his contract is entitled to no greater rights than he would have had had the contract been performed at the agreed time (see Bostwick v Beach, 105 NY 661, 663). Neuman purchased subject to the April lease and to the rights of renewal and of assignment which that lease contained, but not subject to the altered terms contained in the October lease, even though arguably in his favor. That the October lease was void as to Neuman did not, however, invalidate the April lease, unless by their actions the parties to it had themselves invalidated it.
From the execution of a subsequent lease inconsistent with an earlier one, surrender of the earlier lease may be implied (Coe v Hobby, 72 NY 141,146), but for there to be a surrender “there must be a new lease, valid in law, to pass an interest according to the contract and intention of the parties” (id., at p 147). There is, however, no surrender if the new lease is ineffective (Chamberlain v Dunlop, 126 NY 45, 51; see Smith v Kerr, 108 NY 31, 38; 2 Walsh, Real Property, § 190, pp 338-339; 34. NY Jur, Landlord & Tenant, § 392, pp 237-238), or when the purpose of the new lease is to obtain a renewal or extension of the term (Witmark v New York El. R. R. Co., 149 NY 393, 396, affg 76 Hun 302, 306). It follows that though Pussycat could take nothing by the October lease without Neuman’s consent, it retained its rights, under the April lease and its exercise of the option in that lease, to a term ending March 31, 1987, and to assign subject to the consent provision of the lease.[3]
*503 The assignment by Pussycat to Margin Call was, therefore, not wholly invalid as the courts below have held. We need not now decide whether Suffolk’s consent to that assignment would be sufficient had Pussycat not been given notice of Neuman’s interest under the contract of sale, for the rider establishes that prior to the assignment to Margin Call, Pussycat was aware of that contract. It is enough on this point to note that Neuman as equitable owner had the right to withhold consent only if he had a reasonable ground for so doing and that the existence of a reasonable ground must be proved by Neuman’s successor, the present owner, and will not be presumed. For like reason the assignment from Margin Call to plaintiff must be given effect unless the landlord can establish a reasonable ground for withholding consent.
The fact that the assignments to Margin Call and to plaintiff purported to be of the October rather than the April lease is not fatal. Having assigned the right to possession of the entire premises for the entire term to which it was entitled under the April lease, Pussycat will not be heard to say that its assignment conveyed nothing because it referred to a document of another date but for the same premises and term (see Thompson v Simpson, 128 NY 270, 286; Stewart v Long Is. R. R. Co., 102 NY 601, 608; Christie v Gage, 71 NY 189,193), and the same rule applies to Margin Call’s assignment to plaintiff. The assignees under those respective assignments have not suggested that the present landlord is limited by the October lease nor has plaintiff contested the right of the landlord to enforce the terms of the April lease. The landlord is, thus, in the same position that Neuman would have been had title closed on the contract date, provided only that it is afforded the opportunity to establish, if it can, reasonable ground for withholding consent to plaintiff’s occupancy as assignee. Neuman’s decree of specific performance entitled him and his codefendant, as his successor in interest, to no more (Bostwick v Beach, 105 NY 661, 663, supra).
Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to Supreme Court, New York County, for further proceedings in accordance with this opinion.

. The paragraph read, in full: “Tenant recognizes that tenant’s prior lease dated April 10, 1979 relative to these premises was annexed to a proposed Contract of Sale dated September 19, 1979 between Suffolk Industrial Commodities, Inc., and Edwin M. Neuman, which contract has been disaffirmed by Suffolk by reason of failure of consideration. Tenant understands and agrees, for itself and on behalf of any future assignee or sublessee, that if the aforementioned contract is held to be valid by any court or if landlord herein for any reason, in its sole and absolute discretion, decides to consummate an agreement of sale with Edwin Neuman, this lease shall be void and of no further effect and tenant shall have only those rights and obligations as are set forth in the prior lease dated April 10,1979. Under no circumstances shall any liability, charge or obligation attach to landlord by reason of its exercise of its option to sell the building to Edwin Neuman.”

. In view of the conclusion hereafter reached, the fact that the assignments were accompanied by the version of the October lease which did not contain the rider is not relevant.

. To reason as does the dissent ignores the principle long ago declared in Van Rensselaer’s Heirs v Penniman (6 Wend 569, 579) that, “As this presumption of a surrender arises from the acts of the parties, which are supposed to indicate an intention to that effect, it must follow that where no such intention can be presumed, without doing violence to common sense, the presumption cannot be supported” (accord Coe v Hobby, 72 NY 141, 146).