■ JACOB KATZ, Respondent, v BENEDETTO MARRA, Appellant. [905 NYS2d 204]—

In an action for specific performance of a contract for the sale of real property, the defendant appeals from (1) an order of the Supreme Court, Kings County (Vaughan, J.), dated September 10, 2008, which denied his motion to vacate an order and judgment (one paper) of the same court dated November 20, 2006, granting the plaintiff's unopposed motion for summary judgment on the complaint and awarding the plaintiff specific performance of the contract, and (2) an order of the same court, also dated September 10, 2008, which denied his motion to vacate an order of the same court dated January 3, 2008, granting the plaintiff's unopposed motion for the appointment of a special referee to sign a deed transferring the subject real property to the plaintiff.

Ordered that the orders dated September 10, 2008, are affirmed, with one bill of costs.

In September 1997 the plaintiff entered into a contract for the purchase of the defendant's apartment building in Brooklyn. The contract price relating thereto was $270,000. As required by the contract, the plaintiff tendered the sum of $20,700 as a down payment.

The original closing date was set for November 21, 1997. On the consent of the parties, the closing date apparently was extended in order to permit the plaintiff additional time to obtain financing through a mortgage loan. On December 12, 1997, Greenpoint Savings Bank issued a mortgage loan commitment to 3615-15 Realty Corp. (hereinafter Realty Corp.), a corporation wholly owned by the plaintiff. On December 18, 1997, the plaintiff assigned to Realty Corp. his rights under the subject contract of sale. The last mortgage commitment extension granted to Realty Corp. by Greenpoint expired on April 10, 1998. The record does not reveal that any further mortgage loan commitments were obtained in connection with the transaction. The closing did not take place.

In 1999, the plaintiff commenced an action in the Supreme Court, Kings County, by summons with notice. The plaintiff, however, failed to file a complaint. Thereafter, in 2003, the plaintiff commenced the instant action for specific performance of the subject contract.

In May 2006, the plaintiff moved for summary judgment on the complaint. By order and judgment dated October 17, 2006, the Supreme Court granted the plaintiff's motion, upon the de-

fendant's default. In September 2007, the plaintiff moved for the appointment of a special referee to sign a deed conveying the property to him. The defendant similarly did not oppose that motion. By order dated January 3, 2008, the Supreme Court granted the plaintiff's motion for the appointment of a special referee to sign a deed conveying to the plaintiff the subject property.

In 2008, the defendant moved to vacate the order and judgment dated October 17, 2006, as well as the order dated January 3, 2008. The Supreme Court denied the defendant's motions. We affirm.

Pursuant to CPLR 5015 (a), "[t]he court which rendered a judgment or order may relieve a party from it upon such terms as may be just." This statute sets forth certain grounds for vacatur, including excusable default, newly-discovered evidence, fraud, misrepresentation, and lack of jurisdiction. As recognized by the Court of Appeals, the drafters of CPLR 5015 did not envision that this statute would provide an exhaustive list of the grounds for vacatur (*see Woodson v Mendon Leasing Corp.*, 100 NY2d 62, 68 [2003]). Instead, a court retains "its discretionary power to 'vacate its own judgment for sufficient reason and in the interests of substantial justice' " (*Goldman v Cotter*, 10 AD3d 289, 293 [2004], quoting *Woodson v Mendon Leasing Corp.*, 100 NY2d at 68; *see Ladd v Stevenson*, 112 NY 325, 332 [1889]). However, "[a] court's inherent power to exercise control over its judgment is not plenary, and should be resorted to only to relieve a party from judgments taken through [fraud,] mistake, inadvertence, surprise or excusable neglect" (*Matter of McKenna v County of Nassau, Off. of County Attorney*, 61 NY2d 739, 742 [1984] [internal quotation marks omitted]; *see Long Is. Light. Co. v Century Indem. Co.*, 52 AD3d 383, 384 [2008]; *Quinn v Guerra*, 26 AD3d 872, 873 [2006]).

Here, the defendant failed to establish grounds warranting relief under CPLR 5015 (a) (1). A defendant seeking to vacate an order entered upon his or her default in opposing a motion pursuant to CPLR 5015 (a) (1) must demonstrate both a reasonable excuse and a potentially meritorious defense (*see Newell v Hirsch*, 65 AD3d 1108, 1109 [2009]; *Pisciotta v Lifestyle Designs, Inc.*, 62 AD3d 850, 853 [2009]; *Simpson v Town of Southampton*, 43 AD3d 1033, 1033-1034 [2007]). In this regard, as acknowledged by our dissenting colleagues, the defendant did not set forth a reasonable excuse for his defaults. Indeed, he essentially offered no excuse whatsoever.

Further, although the defendant moved to vacate the order and judgment pursuant to CPLR 5015 (a) (3), he failed to estab-

lish that the plaintiff procured that order and judgment by fraud, misrepresentation, or other misconduct (*see* CPLR 5015 [a] [3]; *Citicorp Vendor Fin., Inc. v Island Garden Basketball, Inc.*, 27 AD3d 608, 609 [2006]; *Badgett v Badgett*, 2 AD3d 379 [2003]). There is no support in the record for the position of the dissent that the plaintiff appears to have obtained summary judgment through an affirmative misrepresentation or that he made implicit affirmations to mislead the court.

In our view, this case does not warrant the invocation of a court's inherent power to vacate its orders and judgment in the interest of substantial justice. Notwithstanding the dissent's characterization, there is nothing unique or unusual about this case. This Court has previously found that claims of financial distress are not sufficient to justify the exercise of the court's inherent discretionary power to vacate its own judgment in the interests of substantial justice (*see Matter of Dayton Towers Corp. v Gethers*, 24 AD3d 663, 664 [2005]). Simply stated, this is not an appropriate case in which to exercise the broad equity power of a court to vacate its own orders and judgment.

We note that the cases cited by the dissent for the proposition that vacatur is warranted in the interest of substantial justice are inapposite and/or distinguishable. For instance, in *Ruben v American & Foreign Ins. Co.* (185 AD2d 63 [1992]), the court vacated a judgment, upon the "joint" motion and consent of the parties. Other cases relied upon by the dissent, such as *Government Empls. Ins. Co. v Employers Commercial Union Ins. Co.* (62 AD2d 123 [1978]) and *Soggs v Crocco* (247 AD2d 887 [1998]), did not involve a motion to vacate an order or judgment entered upon default.

The defendant's remaining contentions either need not be considered in light of our determination or are without merit.

Accordingly, the Supreme Court providently exercised its discretion in denying the defendant's motions. Prudenti, P.J., Rivera and Fisher, JJ., concur.

Belen, J., dissents and votes to reverse the orders appealed from and grant the defendant's motions with the following memorandum, in which Austin, J. concurs:

In a case involving specific performance of a contract for the sale of a residential building, the majority finds that the facts did not warrant invoking the Supreme Court's inherent discretionary power to vacate a default judgment in the interest of substantial justice. They reach this conclusion even though denying vacatur in this case awards specific performance to a plaintiff who never had standing to prosecute this action because of an assignment of his rights to the contract of sale

which he entered into nine years before moving for summary judgment on the complaint.

The majority also affirms the order denying the motion to vacate an order and judgment dated November 20, 2006, awarding summary judgment to the plaintiff for specific performance even though the plaintiff did not establish a prima facie right to any relief given that the mortgage loan commitment upon which he relied was not even issued to him and further, it expired eight years before moving for summary judgment. As a result of the affirmances here, the plaintiff realizes specific performance even though he sat on his rights for nearly a decade, during which time the defendant maintained the property at an expense of more than $350,000, and during which time the value of the property rose dramatically.

Because I believe that denying vacatur under these circumstances results in a substantial injustice to the defendant and a wholly unwarranted windfall to the plaintiff, I respectfully dissent.

At the outset, I recognize that CPLR 5015 (a) authorizes a court to vacate a default judgment on the ground of, inter alia, excusable neglect or misrepresentation, as long as the movant demonstrates a reasonable excuse for its default and a meritorious defense to the action (*see* CPLR 5015 [a] [1], [3]; *Verde Elec. Corp. v Federal Ins. Co.*, 50 AD3d 672, 672-673 [2008]; *Bank of N.Y. v Lagakos*, 27 AD3d 678 [2006]). I further recognize that in moving for vacatur of the order and judgment dated November 20, 2006, awarding summary judgment to the plaintiff for specific performance, the defendant did not set forth a reasonable excuse for his default. Such failure, under the unique circumstances of this case, is not fatal to the defendant's motion.

Indeed, the stated bases for vacatur of judgments set forth in CPLR 5015 (a) were never intended to provide a fully comprehensive list of possible grounds therefor (*see Woodson v Mendon Leasing Corp.*, 100 NY2d 62, 68 [2003]; *Ruben v American & Foreign Ins. Co.*, 185 AD2d 63, 67 [1992]; *Government Empls. Ins. Co. v Employers Commercial Union Ins. Co.*, 62 AD2d 123, 127 [1978]). Instead, "the drafters of that provision intended that the courts retain and exercise their inherent discretionary power in situations that warranted vacatur but which the drafters could not easily foresee" (*Woodson v Mendon Leasing Corp.*, 100 NY2d at 68). As the Advisory Committee on Practice and Procedure explained, "[t]he court's inherent power to relieve a party from the operation of a judgment in the interest of substantial justice is not limited in any way by the proposed rules. 'The whole power of the court to relieve from judgments

taken through 'mistake, inadvertence or excusable neglect' is not limited . . . ; but in the exercise of its control over its judgments it may open them upon the applications of anyone for sufficient reason, in the furtherance of justice. Its power to do so does not depend upon any statute, but is inherent' " (3rd Preliminary Report of Advisory Comm on Prac and Proc, Title 50, at 204 [Mar. 1, 1959], quoting *Ladd v Stevenson,* 112 NY 325, 332 [1889]).

A court thus possesses the inherent power to vacate its judgments in the interest of justice (*see Woodson v Mendon Leasing Corp.,* 100 NY2d at 68), and the appellate courts have not hesitated to do so when unique circumstances warranted vacatur (*see e.g. Wade v Village of Whitehall,* 46 AD3d 1302 [2007] [default judgment vacated although no reasonable excuse given because award was an unfair windfall and movant was confused about legal process]; *Government Empls. Ins. Co. v Employers Commercial Union Ins. Co.,* 62 AD2d at 127 [absent a reasonable excuse, default judgment for insurance company vacated because insured had not been notified of policy cancellation]; *Soggs v Crocco,* 247 AD2d 887, 888 [1998] [default judgment vacated without reasonable excuse because specific performance impossible under contract terms]). Moreover, *Matter of McKenna v County of Nassau, Off. of County Attorney* (61 NY2d 739, 742 [1984]), cited by the majority for the proposition that a court's discretion to vacate its judgments is not plenary, is readily distinguishable from the instant case. In *McKenna,* the Supreme Court abused its discretion by exceeding the traditional authority of courts to alter the terms of an arbitrator's award (*id.*).

In any event, even if the majority's reliance on *McKenna* were correct, the circumstances at bar satisfy the rubric of CPLR 5015. Indeed, the plaintiff appears to have obtained summary judgment through an affirmative misrepresentation to the Supreme Court. It is significant that, in moving for summary judgment, the plaintiff failed to establish that he was entitled to specific performance as a matter of law. In his moving papers, the plaintiff represented that he had obtained extensions on his mortgage commitment and thus implicitly affirmed that he was able to perform, even though the extensions had expired in April 1998, approximately eight years earlier. Moreover, the mortgage commitment was to a corporation not in privity with the defendant. This appears to be an attempt to mislead the court into believing that he was ready, willing, and able to close on the subject property, a prerequisite to a cause of action for specific performance (*see Lot 57 Acquisition Corp. v Yat Yar*

*Equities Corp.*, 63 AD3d 1109, 1111 [2009]; *Paglia v Pisanello*, 15 AD3d 373 [2005]; *Cheemanlall v Toolsee*, 17 AD3d 392, 393 [2005]). This affirmative misrepresentation is the type of circumstance warranting vacatur (*see Matter of McKenna v County of Nassau, Off. of County Attorney*, 61 NY2d at 742; *cf. Jericho Group, Ltd. v Midtown Dev., L.P.*, 47 AD3d 463 [2008]; *Bell v Town Bd. of Town of Pawling*, 146 AD2d 729 [1989]).

In addition, there is no evidence that there were any hurdles to conveyance preventing a closing during the nine years since the assignee corporation had received a mortgage loan commitment from Greenpoint Savings Bank in December 1997 (*see Groesbeck v Morgan*, 206 NY 385 [1912]; *Richardson v Vajiradhammapadip Temple*, 24 AD3d 649 [2005]; *cf. EMF Gen. Contr. Corp. v Bisbee*, 6 AD3d 45, 53 [2004]). However, during this period, according to the defendant, the value of the subject premises had increased from the agreed contract price of $270,000 in 1997, to more than $1,000,000 in 2003, when the complaint in the instant action was filed. He also estimated that between 1997 and 2008, he had expended more than $350,000 to maintain the subject premises on the reasonable belief that the plaintiff had abandoned this matter. These allegations are not contested by the plaintiff. As such, given that the default judgment will likely result in an enormous financial windfall for the plaintiff that neither party could have intended at the contract signing, the defendant was severely prejudiced by the plaintiff's delay (*see Richardson v Vajiradhammapadip Temple*, 24 AD3d 649 [2005]).

In sum, under the unique circumstances presented, the Supreme Court should have exercised its inherent authority to vacate, in the interest of justice, both the order and judgment dated November 20, 2006, and the order dated January 3, 2008. I would reverse the orders appealed from, grant the defendant's motions to vacate, and remit the matter to the Supreme Court, Kings County, for a trial on the merits (*see Woodson v Mendon Leasing Corp.*, 100 NY2d at 68; *Cippitelli v Town of Niskayuna*, 277 AD2d 540, 541 [2000]; *Soggs v Crocco*, 247 AD2d at 888).